**STATE, Plaintiff-Appellant, v BRUNSWICK, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 18440. Decided December 1, 1941.

208

CARTER, PJ, PHILLIPS and NICHOLS, JJ, of the Seventh District sitting by designation.

Frank T. Cullitan, Prosecuting Attorney, Cleveland, Neil W. McGill and John P. Butler, Assistant Prosecuting Attorneys, Cleveland, for plaintiff-appellant.
Kastriner, Schweid & Adams, Cleveland, for defendant-appellee.

## OPINION

By NICHOLS, J.

State of Ohio prosecutes this appeal on questions of law from the judgment of the common pleas court of Cuyahoga

County, wherein that court sustained a demurrer to the first and third counts of an indictment returned by the Grand Jury against David Brunswick appellee, purporting to charge appellee with the crime of blackmail under §13384 GC.

The demurrer was sustained by the lower court on the ground that no offense punishable under the laws of Ohio was stated in either count.

Upon call of this appeal for hearing upon oral arguments, on November 24, 1941, counsel for appellee interposed an oral motion to dismiss the appeal for failure to file brief as provided in §13459-3 GC, it being contended by appellee "that the Court of Appeals loses jurisdiction in a criminal case if the appellant does not file his brief within the statutory period" and "that jurisdiction can not be waived."

It is conceded by appellee that its brief was not filed with the certified transcript of the record prepared by the clerk. The judgment of the lower court was entered June 9, 1941, the notice of appeal being filed within thirty days from that date, and the assignments of error was filed July 9, 1941, but the brief of appellant was not filed until November 21, 1941.

If the requirements of §13459-3 GC with reference to the filing of brief by appellant is a jurisdictional requirement, then the motion of appellee must be sustained, as we agree that jurisdiction can not be waived or conferred by agreement of parties.

It is stated orally by counsel for appellant that the recognized practice in the Court of Appeals for the Eighth Appellate District of Ohio has established the rule that appellant's brief may be filed at any time up to the date of assignment of the appeal for oral argument.

Rule X of the Rules of Practice of the Courts of Appeals of Ohio, as amended and effective under the Appellate Procedure Act of 1935 (50 Oh Ap XLIX) provides:

"The judges of the several districts may adopt such rules upon questions of practice or as to the time of filing briefs, as they may deem expedient."

It thus appears that the practice established in the Eighth Appellate District should not be disturbed by this Seventh District Court, sitting in the Eighth District by assignment of the Chief Justice, unless we shall find that the failure to file briefs in accordance with the provision of §13459-3 GC, deprives this court of jurisdiction to hear the appeal. Concededly, the language of §13459-3 GC, unrelated to other provisions of the

Appellate Procedure Act of 1935, is mandatory in form, in that it is stated therein that:

"The brief of the appellant **shall** be filed with the transcript and shall contain the assignments of error relied on in such appeal."

It is claimed by appellee that where the Legislature has so fixed the time for filing the brief no rule of the court can alter the same. In our opinion, such claim fails to give consideration to other provisions of the Appellate Procedure Act, which clearly indicates to this court that no appeal which has been duly instituted by the filing of the required notice of appeal should be dismissed upon purely technical grounds unless prejudice to the adverse party appears, such prejudice or lack thereof to be determined by the court in the exercise of sound discretion.

It is contended that our views upon this subject are at variance with the decisions of other courts of appeals, and we are referred to certain cases as being so in conflict with our decision upon this subject as to require certification to the supreme court on the ground of such conflict. The cases referred to will be analyzed after calling attention to such related provisions of the Appellate Procedure Act as, in our opinion, require us to find that the requirement of §13459-3 GC, is not jurisdictional and that the seeming mandatory provisions of this section as to the filing of brief by appellant is in fact directory only, resting the matter of filing brief in criminal cases within the sound discretion of the court. This has been the rule adopted by the Seventh District Court of Appeals in both civil and criminal cases.

In our opinion many sections of the Appellate Procedure Act, other than those referred to in the "Comment" following §13459-3 GC (Page's Ohio General Code) apply equally to criminal and civil cases and in giving construction to any particular section the whole Act (116 O. L. 104 et seq) must be considered.

We quote certain provisions of the Act; emphasizing such portions as emphasize the application of the Act to both criminal and civil cases:

**Sec. 12223-49:** "This act shall become effective on the first day of January, 1936, and shall apply to the proceedings **in any action** where the final order or judgment appealed from

is rendered after that date." 116 O. L. 104 (114), §1, Eff 1-1-36.

Sec. 12223-1: "The word 'appeal' as used in this act shall be construed to mean **all proceedings whereby one court reviews or retries a cause determined by another court,** an administrative officer, tribunal, or commission."

2: "The 'appeal on questions of law' shall be construed to mean a review of a cause upon questions of law including the weight and sufficiency of the evidence and shall include **all the proceedings heretofore and otherwise designated in the General Code as proceedings in error.**"

3: "* * *    * * *    * * *  ."

116 O. L. 104 (105) §1, Eff. 1-1-36.

Sec. 12223-3: "**Every** final order, judgment or decree of a court  *  *  *  may be reviewed as hereinafter provided unless otherwise provided by law,  *  *  *  ."    116 O. L. 104 (105) §1, Eff. 1-1-36.

Sec. 12223-4: "**The appeal shall be deemed perfected when written notice of appeal shall be filed with the lower court  *  *  *.  After being duly perfected,** no notice of appeal shall be dismissed without notice to the appellant, **and no step required to be taken subsequent to the perfection of the appeal shall be deemed to be jurisdictional.**"    116 O. L. 104 (105), §1, Eff. 1-1-36.

Sec. 12223-5: "The notice of appeal shall designate the order, judgment or decree appealed from and whether the appeal shall be on questions of law or questions of law and fact.  In said notice the party appealing shall be designated the appellant and the adverse party the appellee, and the style of the case shall be the same as in the court of origin.  The failure to designate the type of hearing upon appeal shall not be jurisdictional and the notice of appeal may be amended by the appellate court in the furtherance of justice for good cause shown."    116 O. L. 104 (105) §1, Eff. 1-1-36.

Sec. 12223-21: "Appeals taken on questions of law shall be heard upon assignments of error filed in the cause or set out in the briefs of the appellant before hearing.  Errors not argued by brief may be disregarded, but the court, in its discretion, may consider and decide errors which are not assigned or specified.  Failure to file such briefs and assignments of error within the time prescribed by the court rules shall be cause for dismissal of such appeal.  All errors assigned shall be passed upon by the court.  *  *  *  ."    116 O. L. 104 (109), §1, Eff. 1-1-36.

Sec. 12223-27: "A judgment rendered or final order made by a court of common pleas,  *  *  *  may be reversed, vacated

or modified upon an appeal on questions of law by the court of appeals having jurisdiction in the county wherein the common pleas or other court of record is located, for errors appearing on the record." 116 O. L. 104 (110), §1.

Secs. 13459-1 and 13459-2 GC, relating to criminal cases, remain as before the adoption of the Appellate Procedure Act of 1935.

Sec. 13459-3 GC, provides that "the proceedings to review such judgment or final order" in a criminal case "shall be by appeal which shall be instituted by filing notice of appeal with the court rendering such judgment or order and with filing a copy thereof in the appellate court where leave to appeal must be obtained. Upon filing the notice of appeal there shall be filed in the appellate court the transcript prepared by the clerk and any original papers received by him. * * * The brief of the appellant shall be filed with the transcript and shall contain the assignments of error relied on in such appeal. Within fifteen days thereafter, the appellee shall file its brief. All of such proceedings to review such judgments shall have precedence of all other cases in said reviewing court, and shall stand for hearing on the trial docket of said court from day to day until heard and submitted; provided that any special statutes regulating appeals in particular cases shall not be affected in any wise by this section."

Sec. 13459-4 GC provides:

"Such appeal, unless otherwise provided, may be filed as a matter of right within thirty days after sentence and judgment. After thirty days from such sentence and judgment such appeal may be filed only by leave of the court or two of the judges thereof." 116 O. L. 104 (117), §2.

From the language of the last quoted section, it clearly appears that the court of appeals has very broad discretion as to time in which appeal in a criminal case may be prosecuted; even two judges of the court of appeals may grant leave to file such appeal at any time after thirty days from sentence and judgment. It is not conceivable to this court that the legislature intended by the language used in §13459-3 GC to limit the powers of the court to extend the time for filing briefs in criminal cases and in the same legislative enactment provide that the court, or two judges thereof, could grant leave to prosecute an appeal in a criminal case at any time after thirty days from sentence and judgment. Surely the greater

power would include the lessor. There would seem to be no logic in requiring the appeal to be dismissed for failure to file brief with the transcript, in view of the fact that the court, or two judges thereof, could immediately grant leave to file a new appeal in this case.

If §§12223-1, 12223-3, 12223-4, 12223-5, 12223-21, 12223-27 and 12223-49 of the Act do not apply to criminal cases, then the provisions of the General Code dealing with criminal cases are strangely silent with reference to the matters contained in these sections. If any one of these sections applies to criminal cases, then no argument exists in favor of excluding the provisions of any of them to criminal cases.

Keeping in mind the definitions of the words "appeal" and "appeal on questions of law" as set forth in §12223-1 of the Act, how can it be said that the provisions of §12223-21 of the Act do not apply to both criminal and civil cases? So applying the provisions of this section to criminal cases, it is seen that the appeal on questions of law in a criminal case shall be heard upon assignments of error filed in the cause or set out in the briefs of appellant before hearing; that errors not argued by brief may be disregarded by the court, but the court, in its discretion, may consider and decide errors which are not assigned or specified; that failure to file such briefs and assignments of error within the time prescribed **by the rules of the court** shall be cause for dismissal of such appeal.

We call attention to the fact that §13459-3 GC, does not provide that the court shall dismiss the appeal for failure of the appellant to file briefs as therein set forth; nor does any other provision of the General Code require the appeal to be dismissed for such failure, or that the filing of the brief with the transcript in a criminal case is jurisdictional.

Surely it must be conceded that since the court of appeals, in its discretion, may consider and decide errors which are not assigned or specified, it can not reasonably be claimed that failure to file brief at any particular time prescribed either by rule of court or by statute **shall necessarily** work a dismissal of the appeal, especially in view of the provision of §12223-4 GC that "no step required to be taken subsequent to the perfection of the appeal shall be deemed to be jurisdictional."

Nor is there any reason why less liberality shall be indulged in an appeal where the life or liberty of a person are involved than in one where civil or property rights are concerned; yet the construction we are requested by appellee to give to §13459-3 GC would render impotent an appeal by one

convicted of an offense punishable by death or imprisonment, for such convicted person, in order to suspend execution of sentence, must file his notice of appeal; then, if strict application of the provision of the act is to be applied, he must file with his notice of appeal the transcript prepared by the clerk and with the transcript his brief. Of course, his bill of exceptions will not be available at that time, and every lawyer knows that a brief prepared before opportunity to examine the bill of exceptions is practically worthless.

That time for preparation of the bill of exceptions if necessary has been recognized by the legislature, since by §13445-1 GC, thirty days is fixed as the limit of time for filing same in a criminal case, and by §13572 GC, the notice of appeal, transcript and other papers may be filed without waiting to perfect the bill of exceptions, whereupon he may secure a stay of execution. In **Long v State, 109 Oh St 77,** 141 N. E. 691, the supreme court held the provisions of §11572a GC, apply to criminal cases. Certainly the appeal cannot be heard until the bill of exceptions is perfected and filed. By statute (§13445-1 GC) the bill of exceptions must be filed in the trial court within thirty days, and by rule of the courts of appeals may be filed within fifty days or at such later time as leave may be granted by the appellate court.

Construing all the applicable provisions of the appellate procedure act of 1935, we hold the requirement of §13459-3 GC with reference to filing brief by appellant is not jurisdictional and that this court in the exercise of sound discretion may grant additional time to file such brief, and further, that this court may consider the brief of appellant filed in this case in accordance with the rule established in the 8th Appellate District of Ohio.

The cases cited as being in conflict with our decision on this point are:

**State v Jarcho, 65 Oh Ap 417,** 30 N. E. (2d) 444, **19 OO 34, 30 Abs 645;**

**State v Parnell, 56 Oh Ap 77,** 9 OO 235, 10 N. E. (2d) 18;

**State v Bell, 52 Oh Ap 11,** 2 N. E. (2d) 786;

**In Re Estate of Arrowsmith, 54 Oh Ap 391,** 8 OO 156, 22 Abs 77, 7 N. E. (2d) 826;

**State v Jones, 33 Abs 330;**

**State v Link, 28 Abs 101;**

**State v Carmen, 31 Abs 330.**

In not one of the cases cited has the Court of Appeals held that the failure to file brief as prescribed in §13459-3 GC, deprives the court of jurisdiction to hear and determine the

appeal. It is true that in the case of State v Jarcho, supra, the Court of Appeals held that the provisions of §13459-3 GC, are mandatory, and in the opinion of Hornbeck J., it is said that the motion of the prosecuting attorney to dismiss the appeal will be sustained because the brief of appellant was not filed with the transcript. This statement as to the mandatory character of the language of that section and the power of the court to dismiss for failure to comply therewith is far from holding that because of such mandatory requirement the court had no jurisdiction of the appeal and had no other course than to dismiss it for such failure. Indeed, the court in that case proceeded to hear the appeal "examined this testimony in the light of the errors assigned" and became "convinced that no error prejudicial to the appellant is to be found in the proceeding." To so find the court must necessarily have considered the brief of appellant though not filed in accordance with the provisions of §13459-3 GC. Such action of the court conclusively shows that the court did not find that the failure to comply with that section deprived the court of jurisdiction and is not consistent with any claim that the court may not, in the exercise of its sound discretion, determine the appeal on its merits. And this means, of course. that although the language of the section is in form mandatory, the requirement as to briefs is in fact directory only. No one disputes the power of the court, in the exercise of the discretion reposed therein, to dismiss the appeal for failure to comply with the provisions of the section relating to the filing of briefs, and we understand that certain of the courts of appeals, sitting in the cases above cited, have adopted the practice of dismissing the appeals in all cases where the briefs are not so filed, and other courts have adopted the same practice in civil cases where the briefs are not filed in accordance with Rule VII of the Rules of Practice in the Courts of Appeals (50 **Oh Ap XLIX**). Some cases refer to the practice as a rule of "stare decises" in the particular court, State v Jones, supra. But in that case the court "examined the several assignments of error, the bill of exceptions and briefs," and in fact only held as in State v Jarcho, supra, "that failure to comply with the section was a sufficient ground for the dismissal of the appeal." To the same effect see: **State v Smith, 33 Abs 612.**

The Court of Appeals of the 7th District has just as consistently held that it will dismiss no appeal for failure to file briefs in accordance with rule or statute unless prejudice has resulted to the adverse party, and we think that is just what the legislature intended when it provided that no step in the

proceeding after perfecting the appeal by the filing of the required notice of appeal shall be deemed jurisdictional.

State v Parnell, supra, merely holds that the appeal **may be** dismissed for non-compliance with the rule fixed by §13459-3 **GC.** The same is true as to the case of State v Bell, supra, the court expressly stating that it is not dismissing the appeal for failure to file brief in accordance with §13459-3 **GC.**

The case of In re: Estate of Arrowsmith, supra, does not involve the matter of filing briefs.

In State v Link, supra, the court did not dismiss the appeal for failure to file briefs in accordance with the section, but examined the questions urged, read the record, became "satisfied that there is no prejudicial error to the appellant to be found therein" and affirmed the judgment.

The matter of filing briefs is not considered in State v Carmen, supra.

The motion of appellee to dismiss the appeal is overruled, and the application for certification on the ground of conflict is denied.

Coming now to consider the merits of this appeal do the first and third counts of the indictment returned by the Grand Jury of Cuyahoga County against appellee set forth indictable offenses under the laws of the State of Ohio?

The first count of the indictment is as follows:

"That David Brunswick, on or about the 16th day of October, 1940, at the county aforesaid, unlawfully orally menaced and threatened Michael L. Osborne to do an injury to the property and the person of said Michael L. Osborne, with intent to compel said Michael L. Osborne to do an act against his will, to-wit: to refrain from constructing a building at 10828 Carnegie Avenue, Cleveland, Ohio and to refrain from opening, conducting and operating a floral business in said building at 10828 Carnegie Avenue, Cleveland, Ohio, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio."

It will be noted that the counts of the indictment are in identical language except as to the date of the commission of the alleged offense.

**Sec. 13384 GC,** under which the counts of the indictment were framed, reads as follows:

"Blackmailing: Whoever, with menaces orally or by written or printed communication, sent or delivered by him,

demands of another a chattel, money or valuable security, or accuses, or knowingly sends or delivers a written or printed communication, with, or without a name, or with a letter, mark or designation, accusing or threatening to accuse, another of a crime punishable by law, or of immoral conduct, which, if true would tend to degrade and disgrace such person, or threatening to expose or publish any of his infirmatives or failings, or to subject him to the ridicule or contempt of society, or to do any injury to the person or property of another, with intent to extort or gain from him a chattel, money or valabue security or a pecuniary advantage, or, with intent to compel him to do an act against his will, may be fined not more than one thousand dollars and shall be imprisoned in the penitentiary not less than one year nor more than five years."

Counsel for appellee has given in brief and oral argument a very learned disertation upon the rules of construction claimed to apply to the language of this statute, and therefrom summarizes that "the indictment charges that the defendant (1) 'orally menaced' and (2) threatened injury to the person and property of Michael L. Osborne with intent to compel him to do an act against his will." We find that to be a fair construction of the language used in the indictment. The question then is—does such language state a crime embraced by the statute? The appellee contends that to be guilty of a crime by reason of oral menaces or threats within the meaning of the section, the defendant must have demanded of Osborne "a chattel, money or valuable security" and since the indictment does not so allege no crime is charged therein, it being reasoned that the word "demand" is a verb and that the objects demanded must be a "chattel, money or valuable security"; that the word "orally" as used is an adverb and the expression "with meances orally" qualifies only the words "demands a chattel, money or valuable security."

With this reasoning we do not agree, but hold that the use of the disjunctive word "or" as used in the statute requires the construction that the expression "with meances orally" qualifies as well the words "with intent to compel him to do an act against his will." Given this construction and deleting such portions of the language used in this section as are clearly inapplicable to the situation attempted to be stated in the indictment, the statute reads:

"Whoever, with menaces, orally  *  *  *  threatening to *  *  *  do any injury to the person or property of another

\* \* \* with intent to compel him to do an act against his will, may be fined not more than one thousand dollars and shall be imprisoned in the penitentiary not less than one year nor more than five years."

Can this language be intelligently interpreted so as to definitely apprise the accused that he is charged with conduct prescribed by the legislature as constituting a crime, it being conceded that there are no common law crimes in Ohio?

A "menace" as defined by Webster, is the show of an intention to inflict evil. "Menace" is generally regarded as synonymous with "threat." Lynch v People, 79 Pac. 1015, 33 Colo. 128.

"To menace is to act in a threatening manner, and any overt act of a threatening character, short of an actual assault is a 'menace'."

Cummings v State, 27 S. E. 177, 178, 99 Ga. 662;

Rossi v State, 68 S. E. 56, 58, 7 Ga. App. 732;

Price v State, 72 S. E. 908, 910, 137 Ga. 71;

Worley v State, 71 S. E. 153, 155, 136 Ga. 231.

We hold that the words "with menaces, threatening" are equivalent to the single word "threatens" whereby the clear meaning of the applicable portion of this statute is as follows:

"Whoever threatens orally to do any injury to the person or property of another with intent to compel him to do an act against his will, may be fined \* \* \* ."

Thus we construe the language used in this indictment as stating identically as construed by counsel for appellee, differing only from such counsel in our conclusion that the word 'orally' applies not only to threats by one who 'demands of another a chattel, money or valuable security' but also applies to threats by one 'to do any injury to the person or property of another . . . . . with intent to compel him to do an act against his will.'

As contrary to the views herein expressed, we are cited by appellee to the following cases:

**Elliott v State, 36 Oh St 318;**

**Mann v State, 47 Oh St 557;**

Ditzler v State, 4 C. C. 553, 2 C. D. 702;

Jones v State, 14 C. Rep. 363, 7 C. D. 716.

In Elliott v State, supra, we find nothing to support the claim of appellee, other than the following excerpt taken from the opinion:

"If this were a charge of 'threatening to accuse' the words of the statute would seem to require that it should be in writing;  *  *  *  ."

This statement was mere obiter, not necessary to a decision of the case and, of course, was not carried into the syllabus; and in our opinion is not binding upon any court.

In Ditzler v State, supra, the circuit court was unable to see why the supreme court should give such construction to the statute, but felt in duty bound to follow it, evidently losing sight of the rule that nothing said in the opinion of the supreme court or even in the syllabus to a case is to be deemed binding unless necessary to a decision of the case in the light of the facts. **11 O. Jur.** Courts §145, p. 798.

No one doubts the right to adopt the logic of any statement of the supreme court, but we confess ourselves unconvinced of any logic in the quoted statement, especially in view of the subjunctive clause which read:  "But where accusation is directly made with the unlawful intent, whether verbally or in writing, the crime is complete."

The word 'orally' was not used in the section at the time of the decision in Elliott v State, supra, although the court evidently understood that the legislature meant that by the use of the word 'verbally' to imply oral as distinguished from written threats.  It is quite clear that verbal threats, meaning threats made by the use of words rather than by a show of force, may consist of either oral or written words.  The amendment to the statute, substituting the word 'orally' for the word 'verbally' indicates an intention upon the part of the legislature to clarify the statute as embracing threats made by word of mouth or in writing with intent to cause another to part with a chattel, money or valuable security, as well as threats by word of mouth to do injury to the person or property of another with intent to compel him to do an act against his will.  And in our opinion, it is logical that the legislature should so intend.

We find nothing in Mann v State, supra, which can possibly be construed as approving anything said by the court in Elliott v State, supra, as to necessity of any threat made with the prescribed intent being in writing.

The case of Jones v State, supra, is, to say the least, doubt-

ful authority upon the questions here involved, as shown by the evident confusion of the court in attempting to interpret the language of the indictment and the unsatisfactory wording of the section under which it was drawn. As to the indictment in that case the court states that it 'is very long and involved in its language and in some respects it is difficult to know exactly what it means—stripped of much of its verbage we understand its substance to be about this; * * * ."

In the statement of the court as to what it understood the substance of the indictment 'to be about' reference is made only to certain written instruments, to-wit, a filed affidavit and a copy of a warrant issued thereon. So its appears that the question of the sufficiency of an oral demand, accusation or threat was not involved. The court further stated that: "The statute on which this indictment is founded, Sec. 6830, Rev. Stat. is certainly very unskillfully drawn, and it is exceedingly difficult to form an opinion as to the proper construction to be placed on some of its provisions. It attempts to define what shall constitute the crime of blackmailing, and it is clear from its language that it may be done in different modes and by different acts, and with the different intents, as stated in the section."

The court states its conclusion that "there are two ways pointed out by either of which the crime may be committed" and proceeds to point out two such ways, but further states:

"It may be that such is not the grammatical construction of the language used, but we think it must have been the intention of the legislature so to provide."

The court held the indictment good, in that the written affidavit filed with the Mayor accused Mrs. Urton with the crime of murder and was made with the intent stated. The court further found that certain special requests of defendant to charge the jury should have been given, the failure to charge such being prejudicial error, for which the court decided to reverse the judgment 'if insisted upon by plaintiff in error.'

From the opinion it is impossible to determine whether there was, in fact, a reversal. We find nothing in this opinion which justifies the conclusion that to be guilty under the General Code provision as it now reads one must make menacing threats in writing, as distinguished from oral threats to do injury to the person or property of another with intent to cause him to do an act against his will.

In the case of **McFarland v State, 14 Abs 367,** it is held in the third paragraph of the syllabus:

"An indictment for extortion charging the accused with **saying** to a person mentioned in the indictment that if he acquiesced in the demand of the accused he would not be bothered, plainiy implies an intention to compel the person named to do an act against his will."

The facts recited in the opinion clearly indicate that the defendant had made oral threats to certain barbers to the effect that their property and business would be damaged unless they joined a pretended organization of barbers, and thus were made with intent to compel the barbers to do an act against their will. Conviction was sustained.

"A threat which is a necessary element of the crime of blackmail has been defined as a menace of destruction or injury to person, character or property. It may be made orally or in writing. It may be done by inuendo or suggestion. Any language which conveys a threat with adequate clearness is sufficient. In some instances to ascertain whether language conveys a threat, it must be taken with the circumstances under which it is spoken and the relations between the parties must be considered." **18 O. Jur., Sec. 16, p. 916.**

It is observed that the indictment charges the accused with orally threatenting to do an injury to the person or property of Osborne with intent to compel him **to do an act against his will,** but the indictment goes further and describes the act sought to be compelled as being "to **refrain** from constructing a building  *  *  *  and to refrain from opening  *  *  *  a floral business in said building  *  *  *  ."

Although not urged by counsel for appellee as rendering the indictment on that ground insufficient this court has been concerned with the proposition as to whether threats to compel another to 'refrain' from doing certain things are sufficient to constitute a threat to compel another to **do** an act against his will. In one aspect of the language of this indictment, it would seem that the threats charged were merely with the intent to cause Osborne not to act rather than to do an act.

We have concluded, however, that when one is compelled by threats of injury to his person or property to do otherwise than he wills to do, except for such threats, he is thereby compelled to do an act against his will.

The indictment was sufficient to charge the defendant with the crime of blackmail, under **§13384 GC,** and it follows

that the common pleas court erred in sustaining the demurrer to the indictment to the prejudice of the State of Ohio, for which error the judgment is reversed and the cause remanded for further proceedings according to law.

PHILLIPS, J, and CARTER, PJ, concurs.